**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  NOVAMAR INTERNATIONAL SCARL,          No   C-03-2892 VRW

12         Plaintiff,                          ORDER

13         v

14  NOBLE AMERICAS CORP,

15         Defendant.
   _____/
16

17

18         This case in admiralty is about a shipping voyage whose

19  scheduling went very wrong.

20         Defendant, a chemical supplier, contracted with

21  plaintiff, a chemical parcel tanker operator, to transport a cargo

22  across the Pacific Ocean from Malaysia and Taiwan to the United

23  States.  The vessel, the ISOLA BLU, was late arriving at the Port

24  of San Francisco, missing a scheduled opportunity to unload her

25  cargo.  She had to sit at anchorage in San Francisco Bay from June

26  2, 2003, the date of her arrival, until June 22, when facilities

27  became available to unload the cargo.  For this delay, plaintiff

28  seeks demurrage of $18,000 per day, $334,517.32 all told.  Compl

United States District Court
For the Northern District of California

(Doc #1) at 2.  To secure the release of its cargo, defendant posted a $500,000 bond (representing the demurrage claim plus about 50% to secure plaintiff's costs and fees).  Bond (Doc #12).

Defendant answered and counterclaimed, alleging that plaintiff botched the scheduling for the vessel's arrival in Asia and had failed to prepare the vessel adequately to receive the cargo, thereby delaying her departure from the Asian ports, and in turn delaying her arrival at San Francisco, causing defendant to incur costs and liabilities to the receivers for the late-arriving cargo.  Answer (Doc #14).  Defendant now moves the court to order plaintiff to post countersecurity of $227,850, representing, defendant asserts, the principal amount in controversy in the counterclaim, plus 50% for costs and fees.  Def Mot (Doc #32).  Plaintiff opposes, arguing that (1) defendant's motion for countersecurity is untimely; (2) the underlying counterclaim is frivolous and so does not require countersecurity; and (3)defendant does not genuinely suffer insecurity as to its claim because plaintiff (although in voluntary liquidation) will have sufficient assets to pay any arbitral award.

Supplemental Admiralty Rule E(7)(a) provides in relevant part:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for good cause shown, directs otherwise.

The intent of this requirement is "to place the parties on an equality as regards security." __Washington-Southern Navigation Co v__

2

<u>Baltimore & Philadelphia Steamboat Co</u>, 263 US 629, 638-39 (1924).
Thus, Rule E(7)(A) creates a presumption in favor of ordering
countersecurity on a counterclaim when security has been ordered on
an original claim.

        Plaintiff first contends that defendant's motion is
untimely.  Defendant's answer and counterclaim was filed on July
29, 2003, and it was some twenty months later, on March 25, 2005,
that defendant first applied to the court for countersecurity.
Moreover, defendant's principal claim (relating to its liability to
its receivers for the late arrival of the cargo) accrued several
months before the counterclaim was filed, yet defendant did not
seek to arrest the ISOLA BLU while she was delayed at San
Francisco.  Defendant offers two persuasive responses.  First, it
notes that plaintiff delayed for nearly two years before issuing a
demand for arbitration.  The court concurs; there was a series of
case management conferences in late 2004 and early 2005 during
which the court had to cajole plaintiff into issuing its demand for
arbitration or proceeding with the litigation.

        Second, defendant asserts that it recently learned of
what it terms plaintiff's "precarious financial position."  Because
of this defendant has both subjective insecurity, and, the court
finds, objectively reasonable insecurity.  See Ramos Decl (Doc #33)
¶6 ("[Defendant] has learned that [plaintiff] is in financial
difficulty.  Persons claiming to be liquidators acting on behalf of
[plaintiff] contacted [defendant] regarding this claim.  Those
people have advised [defendant] that [plaintiff] is subject to
liquidation proceedings in Italy."); Bernardini Decl (Doc #38) ¶2
("[Plaintiff] is presently in voluntary receivership.  The company

is undergoing a voluntary liquidation of assets."). It is quite reasonable for defendant to have had no desire to obtain countersecurity (and expose itself to liability for a bond premium as a taxable cost) in the past, but then change its position given the pending liquidation proceeding. This change of circumstances is more than enough to excuse defendant's delay.

Plaintiff's second argument in opposition is that the counterclaim is frivolous. It is well established that "the court should not require countersecurity where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant." Titan Navigation, Inc v Timsco, Inc, 808 F2d 400, 404 (5th Cir 1987). This principle seems to be invoked most often when a seaman of limited means proceeds against a vessel in rem and is confronted with a counterclaim for which he cannot post security; if countersecurity is required, but cannot be posted, the seaman could be forced to abandon him affirmative claim. See, e g, Washington-Southern Navigation, 263 US at 634-35; Titan Navigation, 808 F2d at 404-05. This situation does not seem to apply to plaintiff -- at least, plaintiff does not argue that it will be unable to post security, and affirmatively argues (see below) that it is in no financial peril. Furthermore, there is no evidence that defendant's counterclaim was "advanced solely to secure a negotiating advantage." Id at 404.

Nonetheless, assuming arguendo that it is proper to consider whether a claim is frivolous absent economic inequality and evidence that procedural fencing is afoot, the court does not find defendant's counterclaim to be frivolous. Plaintiff makes a

4

United States District Court

For the Northern District of California

superficially appealing argument:  On the facts as alleged by defendant, even if the vessel had arrived at the Asian ports on schedule, and even if it had been ready to load cargo, it still would not have made San Francisco in time to deliver the cargo to defendant's receivers as required by defendant's contract with its receivers.  As such, plaintiff argues, defendant has no one but itself to blame for being unable to serve its receivers on time.

Plaintiff's argument misses the mark.  The viability of defendant's claim turns not on what its original contract with its receivers was, but on what defendant's reasonable expectation was with respect to delivering its performance to its receivers. Indeed, defendant offers evidence that it amended its contract with its receivers twice in the weeks following the date when performance was originally due.  See Ramos Decl (Doc #40) ¶9 & Ex 3.  Whether defendant would have had to enter into the same contract amendments had the ISOLA BLU arrived without the incremental delay caused by plaintiffs seems to be a question of proof to be put before the arbitrator.  In other words, plaintiff's actions allegedly delayed the vessel's delivery; if through that delay defendant incurred incremental liability to its receivers, it would appear that defendant has a nonfrivolous argument for recovery from plaintiff.

Plaintiff also asserts, in essence, that the charter party does not give defendant an enforceable right to have the vessel arrive at the originating port in a timely fashion.  Without entering the fray on the merits, it strikes the court as highly unlikely that a party aggrieved by a late-arriving vessel would have no damage remedy whatsoever.  And in any event, plaintiff's

United States District Court

For the Northern District of California

argument effectively seeks a determination of the merits of defendant's claim, something that must be left to the arbitrator. Cf <u>United Steelworkers of America v American Manufacturing Co</u>, 363 US 564, 567-68 (1960) ("The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator."). Accordingly, the court cannot say that the claim is frivolous on its face.

Finally, plaintiff argues in opposition to defendant's motion that defendant suffers no genuine insecurity. According to plaintiff's former directors, plaintiff is "in voluntary receivership," in Italy, which is "not an insolvency proceeding." Bernardini Decl (Doc #38) ¶¶2-3; Pesce Decl (Doc #37) ¶¶2-3. Plaintiff provides no details about what this receivership entails or what its financial state during receivership is. Essentially, plaintiff asks the court and defendant to trust that funds will be available to satisfy any arbitral judgment. But a mistrust of parties who say "trust me" is the very foundation for a requirement that security be posted. If Rule E(7)(a) requires the posting of countersecurity between normally situated commercial parties, then <u>a fortiori</u> countersecurity should be required of a foreign corporation undergoing liquidation under foreign law.

Having rejected plaintiff's attempts to overcome the presumption in favor of requiring countersecurity, the court turns to the question of how much security to require of plaintiff. Defendant seeks countersecurity based on "the price adjustment made for [its receivers] [$81,900] and for attorneys' fees [$50,000] and costs [$20,000], including the bond premium [on the security bond already posted]." Def Mot (Doc #32) at 9. Defendant puts this at

$151,900, and seeks 150% of this figure ($227,850) in actual security.  Rule E(5)(a)(i) authorizes security up to "twice the amount of [defendant's] claim," but the balance of the Rule implies that the "claim" does not include interest or costs.  See Rule E(5)(a) ("[T]he court shall fix the principal sum of the bond * * * at an amount sufficient to cover the amount of the plaintiff's claim fairly stated with accrued interest and costs.").  The Rule does not classify attorney fees.  Defendant has cited no authority, nor has the court located any, that holds attorney fees to be part of a claimant's "claim."  Moreover, the computation of plaintiff's claim for bond purposes -- approximately 18 days, 14 hours of demurrage at $18,000 per day pro rata -- excluded any claim for attorney fees.  Finally, as explained below, excluding attorney fees from the "claim" under Rule E(5)(a)(i) will not work a hardship on defendant.

Hence, defendant's actual claim is not $151,900; rather, it is the $81,900 that it rebated to its receivers to compensate for the delay in delivery.  See Def Mot (Doc #32) at 3:21-24. Accordingly, the most security the court can order on this motion is two times $81,900, or $163,800.  Taking as true defendant's representations of the fees and costs it has incurred, this amount will leave defendant fully secured, at least for the time being. And in some sense, defendant is better secured than plaintiff: While defendant has posted security of only about 150% of plaintiff's claim, the court is ordering plaintiff to post proportionately greater countersecurity of 200% of defendant's claim.

Accordingly, defendant's motion for countersecurity (Doc

1  #32) is GRANTED.  Plaintiff shall post countersecurity in the

2  amount of $163,800 on or before June 1, 2005.  If plaintiff fails

3  to do so, defendant may move for the release of its security.

5       IT IS SO ORDERED.



8       VAUGHN R WALKER

9       United States District Chief Judge

United States District Court

For the Northern District of California

8